O'Neill *v.* O'Neill.

---

## Rosa O'Neill

### *v.*

### Daniel O'Neill.

1. Where, in a suit for a divorce for gross cruelty, the testimony of the defendant in regard to his own conduct, as well as other matters, is shown to be untrue, his protestations of repentance and future reformation can not be entertained as a ground for refusing such divorce.

2. *English* v. *English*, 12 *C. E. Gr.* 579, distinguished.

Bill for divorce from bed and board for extreme cruelty. On final hearing on pleadings and proofs.

O'Neill *v.* O'Neill.

*Mr. J. M. Scovel,* for complainant.

*Mr. C. T. Reed,* for defendant.

THE CHANCELLOR.

The parties to this suit were married January 6th, 1875, and from that time to this have resided in Camden. The bill was filed June 29th, 1877, to obtain a divorce *a mensa et thoro,* on the ground of extreme cruelty. By it the complainant alleges that ever since the marriage her husband has treated her with great brutality, and she mentions therein several instances of his ill-treatment. She states that in December, 1876, he violently seized and choked her; that on the 4th of June, 1877, he struck her and knocked her down, so that she fell violently to the floor; and that in July, 1877, he kicked her in the back, and, by his violence of action and language to her, compelled her to hide herself from him in the cellar; that he is habitually intoxicated, and when intoxicated is violent and dangerous; that his assaults upon her were, when the suit was begun, increasing in brutality, and were becoming more frequent, and that she has been compelled to go to the house of one of her neighbors to sleep, because of her fear of her life from his violence.

Though, by his answer and in his testimony, he denies that he has ever laid violent hands upon her, the proof shows clearly that he has frequently, since their marriage, treated her with great cruelty. He is a large and physically powerful young man, and is a blacksmith by trade. She is a small and feeble woman. Though he swears that he never struck her; that he never laid his hand on her, in anger, in his life, and that he never, knowingly or intentionally, hurt her, or treated her cruelly, it appears that he has been indicted for assault and battery upon her, and convicted thereof. She swears that he began to ill-treat her soon after their marriage; that he applied to her the most abusive, vile and offensive epithets, and that he continued his abuse of her down to the time when she was sworn as

O'Neill *v.* O'Neill.

a witness in this suit; that in December, 1876, without cause or provocation, he choked her, and hurt her, and that she caused his arrest for it; that in July, preceding, he kicked her; that on the 4th of June, 1876, he knocked her down; that on that occasion he threw her on the floor twice, and raised a chair to strike her, declaring that he was going to kill her, and she further testifies that about the 1st of May, 1877, he caught hold of her hands and held them together and called for a butcher-knife, with which to kill her; that she escaped from him, but that he sprained her arm, so that she could not use it for a week; that he has driven her into the street, and that she has been frequently compelled to hide herself in the cellar to escape his violence, and through fear for her life. The time stated in the bill as that on which he kicked her, July, 1877, is evidently an error as to the year; for the bill was filed in June, 1877. She swears that he is a dangerous man when he is drunk, and that he is generally drunk. She is fully corroborated in her statements by the neighbors, and those who lived in her family.

Mrs. Faucell, who lived in the next house to the complainant, swears that on the 4th of June, 1877, she saw the defendant knock the complainant down on the floor; that he pushed her to the floor violently, and then closed the door; that the witness and her husband were, at the time, standing on the stoop of the complainant's house, and that when she saw the complainant again (which was in a few minutes afterwards) she was bleeding at the eye. She says that whenever the defendant was drunk he threatened the complainant's life, and the lives of the witness and her husband, also. She further says that he applied to the complainant the vilest epithets.

Albert Faucell, her husband, testifies that some time before Christmas, in 1876, he saw the defendant take the complainant by the neck and choke her; that she screamed, and he then let go of her and she escaped from him, crying "murder," and hid herself from him in a closet; that the

O'Neill *v.* O'Neill.

prints of his fingers were on her neck; that he has seen him drag her out from behind the bar in the saloon which she kept in the house (which was owned by her) in which the complainant and the defendant lived; that she has sometimes come to the witness's house, because she was afraid to stay in her own; that on the occasion of which his wife spoke, in June, 1877, he saw, through the window, the defendant raise a chair to strike the complainant; that the witness knocked at the door, and then all was quiet, and that soon afterwards the complainant appeared, with her face covered with blood, and begged that some one would go for a police officer, and the witness went and got one, and the defendant was arrested. This witness says that the complainant never, as far as he knew, gave the defendant any provocation, and that she always behaved herself properly towards him, and that the defendant was always in a drunken condition.

Robert Staegel swears to the complainant's injuries after the occurrence of June, 1877, just spoken of, and he says that in December, 1876, the defendant was arrested and taken before a justice of the peace for assault and battery on the complainant on the occasion when he choked her, and that the defendant besought the complainant not to press the charge against him. He says her neck was then very much swollen.

A witness to the transaction of the 1st of May, 1877, swears that the defendant then had a large knife in his hand, with which he threatened to cut the complainant's throat. There is evidence that the defendant, in July, 1876, dragged the complainant out of bed by the hair of her head, declaring, with brutal and profane expressions, that he would not have married her if he had not been drunk when he did it, and that he only married her for her money. On that occasion the complainant escaped from him and hid herself in the cellar.

I deem it unnecessary to pursue the testimony in the case further. It is abundantly clear that the defendant has been

O'Neill *v.* O'Neill.

guilty of extreme cruelty towards the complainant, and that she cannot safely live with him. His denials in his testimony are of no weight against the testimony of so many witnesses; and the testimony of his friends and acquaintances, as to his general character for sobriety and peaceableness, is of no avail against the positive proof of his grossly intemperate habits, and of his repeated acts of brutal violence towards his wife, and the evidence which his conviction upon indictment for assault and battery upon her furnishes. And, besides, it is part of the history of this case, that she has been compelled, during the progress of this suit, to appeal to this court for protection against his violence, and to pray that the interdict of this court might be interposed·for her defence.

His counsel urged, upon the hearing, that the defendant was desirous that his wife should continue to live with him; that he expresses affection for her, and promises that, if the divorce be denied, he will for the future treat her with kindness, and he urges that, therefore, on the authority of the court of appeals in *English* v. *English*, 12 *C. E. Gr.* 579, the divorce should be denied. But the action of the court in that case was clearly exceptional. It cannot be held to govern this. A decree of separation for such cruelty as the evidence in this case shows, cannot be averted by mere promises of amendment. It is worthy of remark, in this connection, that with a view to establishing his pecuniary ability to support his wife, the defendant testified, on the 25th of March of the present year, that he was the owner of property worth from $5,000 to $6,000; that he had a shop of his own in Camden, in which he employed six or seven men in the busy season, and that his business was a steady and established one; that for the last two years his business had, he thought, produced him $2,000 a year, above all expenses; that in three years he had lost but four or five days from his work, and those were lost through his illness, and that in good times he could make $10 a day by his own labor; and yet, when this cause came on for hearing (in October

following), he alleged, by his counsel, as a reason why the testimony on his part had not been filed, that he was unable, from sheer poverty, to pay the fees of the examiner (about $35) for taking it, and his counsel stated that he was, of course, utterly unable to pay for printing the testimony, or any part of it. The rule requiring that the testimony be printed was, therefore, in consideration of his alleged poverty, not applied to the case, and the cause was heard on the testimony in manuscript. Nor did the defendant claim that he has lost his property since he testified. It may be added that he has not been required to pay either alimony or counsel fees in this suit. It is impossible to resist the conclusion that his protestations and promises and denials, are alike insincere and untrustworthy.

There will be a decree for divorce, according to the prayer of the bill.